IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOARD OF EDUCATION OF THORNTON TOWNSHIP HIGH SCHOOL DISTRICT 205 *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF EDUCATION OF ARGO COMMUNITY HIGH SCHOOL DISTRICT 217 *et al.*, <br><br> Defendants. | Civil Action No.: 06 C 2005 <br><br> Suzanne B. Conlon, Judge |

## **MEMORANDUM OPINION AND ORDER**

### **BACKGROUND**

Two high school districts in Thornton, Illinois, together with 16 parents and students from

the districts,[1] sued 13 suburban Chicago high school districts[2] for racial discrimination. Plaintiff

---

[1] Plaintiffs are Board of Education of Thornton Township High School District 205, Board of Education of Thornton Fractional High School District 215, Billye Blue, Denise Snelling, Jeanita Eaves, Keyetta Jenkins, David Frazier, Constance Stanley (by her parent Nicole Young), Darren Rogers II, Ike and Angela Riley, Jerry T. and Jacques Jones, Margery Hanson, Darrell Pope, Jr., Ryan Maxie, Michael Akinpelu, and Shea Kapovich.

[2] Defendants are Board of Education of Argo Community High School District 217, Board of Education of Bradley Bourbonnais Community High School District 307, Board of Education of Bremen High School District 228, Board of Education of Community High School District 218, Board of Education of Consolidated High School District 230, Board of Education of Homewood Flossmoor Community High School District 233, Board of Education of Joliet Township High School District 204, Board of Education of Lincoln-Way Community High School District 210, Board of Education of Lockport Township High School District 205, Board of Education of Oak Lawn Community High School District 229, Board of Education of Reavis High School District 220, Board of Education of Valley View Community Unit School District 365U, and Board of Education of Evergreen Park Community High School District 231.

districts serve predominantly African American students; the student populations in defendant districts are predominantly white. Am. Compl. at ¶ 18-20, 36-49. For over 30 years, the districts belonged to a racially diverse South Inter-Conference Association, through which interscholastic and extracurricular activities were organized. *Id.* at ¶ 2. Plaintiffs allege that in December 2004, defendants conspired to withdraw from the association and to form two new conferences. *Id.* at ¶¶ 9-11. Plaintiffs claim the conspiracy resulted in three racially segregated conferences in violation of 42 U.S.C. § 1983 (Count I), 42 U.S.C. §§ 1983, 1985 (Count II), the Illinois Civil Rights Act of 2003, 740 ILL. COMP. STAT. 23/5 *et sq.* (Count III), and common law civil conspiracy (Count IV). Plaintiffs seek injunctive relief and attorneys' fees.

Defendants move to strike six allegations in the amended complaint:

(1) "defendants have revived racial segregation in public schools, separating the races, more than fifty years after *Brown v. Board of Education* outlawed such segregation," Am. Compl. at ¶ 3;

(2) "[d]efendant school districts . . . gerrymandered themselves into the newly created . . . conferences," *id.* at ¶ 36;

(3) "[t]his apartheid-like realignment was accomplished with public funds," *id.* at ¶ 4;

(4) "[t]he secession from [the association] by the defendants is white flight," *id.* at ¶ 13;

(5) "defendants . . . have erected a racial Mason-Dixon line down I-57," *id.* at ¶ 15; and

(6) around the time of the alleged conspiracy, one of defendants' board members purportedly left the following discriminatory remarks on an answering machine:

Today you can't, you can't, do that anymore because you know we're so sick of it – you know, all the Caucasian people. How much more. I look at all the

housing that came down from the city and how they set up these beautiful town houses in Richton [Park], and all in Sauk Village, you know, they cost about $150,000 to build, and these people move in and have to pay a lousy $50 to live in them, per month, and don't even pay and ruin 'em, burn 'em out. And it's just a process that how many years is this going to take, to the point where [we] give them all a free education so we can get them all off welfare and get them into jobs, because it's getting to the point where I'm tired of the welfare, tired of the mentality that poor blackie because let's give them a job so they can be supporting themselves and . . . make them work. You know, forget this I want to be a bum type of thing. I think it's a forever problem in this country, you know, it's never going to go away in this area here. It's part of . . . I watched the neighborhoods all change. The schools that used to be good like Rich Central, Rich East and Rich South are failing schools. Why are they failing? Because of what's in 'em. One of the teachers right down the street said he couldn't wait to get the heck out from 30 years ago when he started teaching when it was just the normal kid. I mean it's a zoo.

*Id.* at ¶ 6.

Defendants argue that these allegations are impertinent and scandalous under Fed. R. Civ. P. 12(f).

## DISCUSSION

### I. Legal Standard

Allegations in a complaint may be stricken if they are "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). As a drastic remedy, a motion to strike is generally disfavored. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir.1989); *Newkirk v. Village of Steger*, No. 02 C 9077, 2004 WL 2191589, at *24 (N.D. Ill. Sept. 24, 2004) (Pallmeyer, J.) (denying motion to strike because movants would have "ample opportunity after discovery to show that the[] allegations are baseless or irrelevant"). To prevail, a movant must establish the allegations in question are either prejudicial or unrelated to the controversy. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). The decision whether to strike rests within the court's discretion. *Id.* at 665.

3

## II.     *Brown* and Gerrymander

Defendants fail to present any facts or law to support their motion to strike the reference to *Brown* in the amended complaint. Plaintiffs, on the other hand, argue *Brown* states the grounds of their suit. *Brown*'s relevancy is unclear at this pleading stage. Because defendants fail to meet their burden to establish immateriality or prejudice, their motion must be denied with respect to the reference to *Brown*. *Talbot*, 961 F.2d at 664.

Similarly, defendants' argument to strike the reference to "gerrymander" lacks factual basis. "Gerrymander" means "[t]he practice of dividing any geographical . . . area into political units (such as school districts) to give some group a special advantage." Black's Law Dictionary 696 (7th ed. 1999). Whether defendants' withdrawal from the South Inter-Conference Association constituted gerrymandering goes to the heart of this case. Absent a showing of prejudice, the motion to strike the reference to "gerrymander" must be denied. *See Spencer v. Dawson*, No. 04 C 5048, 2005 WL 643331, at *6 (N.D. Ill. Mar. 3, 2005) (Manning, J.) ("allegations in a complaint cannot be stricken merely because a defendant disagrees with them").

## III.     Impertinent Allegations

Defendants correctly argue that plaintiffs' references to "apartheid," "white flight," and "racial Mason-Dixon line" are impertinent. "Apartheid" is defined as "[a]n official policy of racial segregation in the Republic of South Africa." Webster's II New Riverside University Dictionary 115 (1984). South Africa's former discriminatory regime has no bearing on the present controversy over high school students' extracurricular activities. Nor is there any basis shown to liken defendants' alleged conduct to "white flight" or a "racial Mason-Dixon line." These impertinent allegations are

4

inappropriate hyperbole and must therefore be stricken. *Talbot*, 961 F.2d at 664; *see also Wilkerson v. Butler*, 229 F.R.D. 166, 170 (E.D. Cal. 2005) (O'Neill, J.) (citing *Talbot* and striking impertinent and prejudicial allegations).

## IV. Discriminatory Remarks

Under the liberal notice pleading standard, plaintiffs need only allege a "short and plain" statement to state a claim. Fed. R. Civ. P. 8(a). Their allegations of discriminatory remarks by a defendants' board member are therefore redundant. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 626-27 (7th Cir. 1999) ("plaintiff does not have to plead evidence . . . to state a claim"). Moreover, the discriminatory remarks, allegedly recorded on an answering machine, are hearsay. The foundation and admissibility of this hearsay are questionable. In response to this motion, plaintiffs argue that the alleged remarks are relevant to this case. Their argument ignores that redundant allegations may be stricken if they serve no purpose other than scandalizing defendants' conduct and converting litigation into theater. *See Talbot*, 961 F.2d at 664 (affirming this court's decision to strike allegations as scandalous). Plaintiffs' redundant allegations of discriminatory remarks appear intended to cast a derogatory light on defendants and must therefore be stricken. *See Cumis Ins. Soc'y Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997) (Alesia, J.) (striking immaterial, prejudicial remarks); *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003) (Friedman, J.) (striking allegations of "racist attitude" because they are immaterial and baseless).

## CONCLUSION

For the reasons set forth above, defendants' motion to strike is granted in part and denied in part. The impertinent, redundant, or scandalous allegations in paragraphs 4 (reference to "apartheid"), 6 (reference to alleged discriminatory remarks), 13 (reference to "white flight"), and 15 (reference to "racial Mason-Dixon line") of the amended complaint are stricken.

ENTER:

Suzanne B. Conlon

Suzanne B. Conlon

United States District Judge

July 10, 2006

6